# Scales *et al. v.* Doe *ex dem.* Otts.

## *Common Law Action of Ejectment.*

1. *Ejectment; adverse possession; burden of proof.*—In an action of ejectment, where the defendant relies upon adverse possession without color or claim of title, the burden is upon him to show actual adverse possession for a period of ten years before the action was begun; and if the evidence is inferential or speculative as to the character of the possession or the length thereof, the defendant will be held to have failed to meet such burden.

[Scales *et al.* v. Doe *ex dem.* Otts.]

2. *Same; defense of adverse possession; filing of notice thereof in probate office.*—Where adverse possession was of less than ten years duration on February 11, 1893, when the act "to require parties claiming adverse possession of land to give notice thereof," was approved, (Acts, 1892-93, p. 478; §§ 1541-1546), it is essential to the maintenance of the defense of adverse possession in an action of ejectment that the party claiming thereunder should have given the notice as required by such statute; and the fact that the plaintiff in an action of ejectment had actual notice of the adverse possession is no excuse for the non-compliance with the provisions of said statute.

3. *Adverse possession; statute requiring notice thereof to be filed in probate office not unconstitutional.*—The statute "to require parties claiming adverse possession of land to give notice thereof," (Code, §§ 1541-1546), is not unconsttiutional, in so far as it was intended to have operation upon adverse possession which had begun and was current at the time of its passage. Adverse possession is essentially tortious, and if existing for a period short of ten years confers no right whatever; and, therefore, no interference with vested rights can be involved in any provision the legislature may make respecting it.

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHARLES A. SENN.

This was a common law action of ejectment against the appellants, Pink Scales and his wife Susie Scales. The complaint declared on four several demises, as follows: From M. M. Otts; C. H. Caldwell and others, heirs of H. M. Caldwell; C. H. Caldwell and others, executors of H. M. Caldwell; Marion Duncan and Helen Nall, only children and heirs at law of Samuel B. Otts. The trial was had by the court without the intervention of a jury, upon issue joined upon the plea of the general issue. The plaintiff introduced in evidence a patent from the United States government to Samuel B. Otts, for the lands sued for, which was dated December 18, 1890, and a warranty deed from Samuel B. Otts and wife, M. M. Otts, to H. M. Caldwell, dated March 26, 1883, and a quit claim deed from Henry M. Caldwell to M. M. Otts, dated April 21, 1883, each of said deeds conveying the lands involved in this controversy. It was admitted that Samuel B. Otts died intestate before the

bringing of the present action, and that Marion Duncan and Helen Nall were his only children and heirs at law. It was also admitted that H. M. Caldwell died before the institution of the present suit, and that whatever title he had to the lands sued for at the time of his death, were vested in his executors, or his children, who are lessors of the plaintiffs.

The defendants relied upon the adverse possession of the lands sued for by Martha Bell, the mother of Susie Scales. It was not claimed that Martha Bell had any paper title or entered under color of title. The defendant introduced in evidence a patent to the lands in controversy from the United States government to Samuel B. Otts, and dated October 30, 1882. The patent which was issued December 18, 1890, and which was introduced in evidence by the plaintiffs contained the recital that it was "issued in lieu of an erroneous one, dated October 30, 1882, which had been cancelled." To establish the adverse posession of Martha Bell to the lands sued for, the defendants examined several witnesses, who testified that Martha Bell went into posession of the lands in 1874, moving into a house that was built thereon; that she cultivated a few acres of land around her house and from time to time sold wood taken from the land; that she exercised acts of ownership over the whole tract of land and claimed it as her own, and that she remained in undisturbed possession thereof until she died in August, 1894; that after her death two of her children remained in possession of said lands and occupied the house thereon until March or April, 1895, when the house was torn down by the agent of Mrs. M. M. Otts, as directed by her. Evidence was introduced which showed that the lands sued for were rough woodland uninclosed and uncultivated except a few acres around the house formerly occupied by Martha Bell.

E. V. Gregory, a witness for the defendant, testified that he was a real estate agent in Birmingham and as the agent of Mrs. M. M. Otts, he went upon the lands involved in this controversy about February 1st, 1885, and found Martha Bell living on said land; that she told him she had settled on the land and that it was

hers; that thereupon he told her that the lands belonged to Mrs. Otts, and that she, Martha Bell, must sign a lease for the land or the witness would have to commence suit to put her off; that he went back the next day and Martha Bell signed a lease for the 80 acres sued for, the rent being $1.50 per month, but that she had never paid the rent; that in 1885, after signing the lease, Martha Bell, in company with one Henry Morrow, came to the witness' office in Birmingham, and said Morrow, speaking for Mrs. Bell and in her presence, repudiated the lease for her and said that Martha Bell had settled on the land and that as the land was hers she never intended to pay any rent and intended to hold the land, and that said Martha Bell paid no rent, but continued in possession of the land until her death, so far as witness knew. This witness further testified that as the agent of Mrs. Otts he paid the taxes on the lands every year, and that after the interview with Martha Bell and Morrow, he brought an action of unlawful detainer against Martha Bell and recovered a judgment against her.

The defendants introduced in evidence the record of an action of ejectment, brought in March, 1891, by M. M. Otts against Martha Bell and others, in which a judgment for plaintiff was entered. The witness was asked by the defendant's attorney if the sheriff had ever put him in possession under the judgment in the action of ejectment. To this question he answered that he had not, and that when the sheriff came to him to execute the writ and put him in possession, that he did not do so because he, the witness, informed the sheriff that Martha Bell had agreed to vacate the premises.

Upon the hearing of all the evidence, the court rendered judgment in favor of the plaintiff, to the rendition of which judgment the defendants duly excepted. There were rulings upon the evidence to which exceptions were reserved by the defendants, but it is unnecessary to set out the facts pertaining thereto in detail. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

[Scales *et al.* v. Doe *ex dem.* Otts.]

DENSON & TANNER, for appellants.—It was shown in
this case that the defendants had acquired title by ad-
verse possession.  The acts which the evidence showed
they exercised, constituted open, notorious, continuous
adverse possession, and they had been in such possession
for more than ten years.—*Goodson v. Brothers,* 111
Ala. 589, 595, 596; *Hughes v. Anderson,* 79 Ala. 209,
215; *Smith v. Keiser,* 115 Ala. 455, 459, 460; *Coleman
v. Banks,* 115 Ala. 308, 314; *Bell v. Denson,* 56 Ala. 444,
448; *Wood v. Montevallo Co.,* 84 Ala. 561, 566.

If there is evidence that the owner of the title had
actual knowledge and notice of an adverse holding and
the intent of the claimant to hold the land as her own,
then there is no necessity for acts of ownership, of such
open and notorious nature as would indicate an intent
to own the land, because the owner already had actual
notice of such, independent of such acts.—*Brown v.
Cockwell,* 33 Ala. 46; *Wood v. Montevallo Co.,* 84 Ala.
560; *Bernstein v. Humes,* 71 Ala. 260; *Martin v. Rowe,*
43 Ala. 284.

JOHN LONDON, *contra.*—The adverse posession neces-
sary to defeat the right of entry on the patent of the
United States cannot begin until the patent had is-
sued, and in an action founded on such patent, the de-
fendant, to succeed must show ten years adverse pos-
session after the date of the patent and before the bring-
ing of the action.—*Gibson v. Choteau,* 13 Wall. 92;
*Redfield v. Parks,* 132 U. S. 239.

Martha Bell being a mere trespasser or squatter, and
not having filed the declaration prescribed by law, her
possession, after February 11th, 1893, was not adverse.
Code, §§ 1541, 1546.

"The right of the State to prescribe the time with-
in which existing rights shall be prosecuted and the
means and conditions on which they may be continued
in force, is undoubted."—*Vance v. Vance,* 108 U. S.
514; *Morgan v. City of Des Moines,* 60 Fed. 208; Wood
on Lim., p. 35.

The rules of evidence are always subject to modifica-
tion and control by the legislature.—Cooley on Con.

Limitations, (6th ed.), 450; 6 Am. & Eng. Encyc. Law, (2d ed.), 950; 20 Am. & Eng. Encyc. Law, 571.

The recovery in the statutory real action and the enery of Mrs. Otts' agent, destroyed the continuity of Martha Bell's possession, and stopped the running of the statute of limitations after the bringing of that action.—*Jackson v. Haviland*, 13 Johns. Rep. 229; *Brolisky v. McClain*, 61 Pa. St. 146; Wood on Lim., § 272; Freeman on Judgments, §§ 295, 297, 299.

McCLELLAN, C. J.—Action of ejectment. Trial without jury. Judge of city court found for plaintiff and rendered judgment accordingly. It is not in any way controverted that title by muniments was in plaintiff's lessors, but the defense is that the defendants have had actual possession adverse to the paper title for ten years or more before suit brought. The entry of defendants was a trespass and without color or claim of title. It was upon them to show actual adverse possession for some period of ten years before the action was begun. We think the trial judge was fully justified in finding that they had not shown such possession for such period on each of two phases of the evidence. First: There is no contradiction of the testimony of the witness Gregory that as the agent of Mrs. Otts he went on the land about February 1st, 1885, and found Martha Bell living on the land, that he told her the land belonged to Mrs. Otts, and that she must sign a lease of the land or witness would have to commence suit to put her off; and that witness went back to see her the next day and she accepted and signed a lease from Mrs. Otts and therein agreed to pay one dollar and fifty cents per month rent. This lease was repudiated and notice given to Gregory that Martha Bell renounced the relation of tenant of Mrs. Otts at some time in the following month, March, 1885, but on what day of that month is in no wise made to appear. These defendants claim through Martha Bell as successors to her possession. She died in August, 1894, and the defendants, her children and heirs at law, continued in possession until *March* or April, 1895, when their possession was terminated. But

whether in March or April is entirely uncertain, and, of course, if in March the day is not shown. For aught that appears their possession may have terminated on a day in March, 1895, which was less than ten years from the day in March, 1885, on which the possession of their mother took on an adverse character as to Mrs. Otts by the repudiation of the relation of landlord and tenant on the part of Martha Bell. Whether so or not is left entirely problematical and speculative, and the *onus* being on the defendants in this connection they must be held to have failed to prove adverse possession for the requisite period of ten years after the abrogation of the lease under which Martha Bell held the possession in February and March, 1885. In the second place Martha Bell's adverse possession was of less than eight years' duration on February 11, 1893, when the act "To require parties claiming adverse possession to land to give notice thereof," was approved. On this state of case it was essential to the defense of adverse possession that she should give the notice required by that statute. Acts, 1892-93, p. 478. There was no evidence adduced in the court below that such notice had ever been given.

We have duly considered the arguments of appellants' counsel in support of the propositions advanced by them that, *first*, this statute has no application to the case because Mrs. Otts had actual notice of Martha Bell's adverse possession and hence the end intended to be accomplished by the statute was subserved without compliance with its provisions; and, *second*, that the statute so far as it was intended to have operation upon an adverse possession which had begun before its passage is unconstitutional; and we do not think that either position is well taken. It is enough to say in respect of the first position thus taken that the statute is, so to speak, express to the contrary: It is therein written down that it is an essential of adverse possession that notice of it should be given in the way therein prescribed; and to hold that any other notice may be substituted for the notice thus required would be not only to reentangle ourselves in the evils the statute was intended to remedy, but to annul the plain terms of the

enactment by judicial legislation. The supposed analogies relied on are inapt and misleading. It is one thing to provide that recordation of a claim shall be constructive notice of it, having the same effect as actual notice, and quite another to provide that the claim shall have no legal status or existence until it is recorded, as is provided by the statute under consideration. As to the second proposition, that the act is unconstitutional if construed to operate upon an adverse possession current at the time of its passage, it will suffice to say that adverse possession short of a period of ten years confers no right whatever and no interference with vested rights can be involved in any provision the legislature may make respecting it. It is indeed essentially tortious, incapable of being made the basis of any right. And the legislature without violence to any organic provision might either extend the period of its duration necessary to its ripening into right or barring the assertion of the original and true title, or it might strike down the whole doctrine of the acquisition of title by possession adverse to the title by muniments.

Affirmed.